## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SCOTT BRIDGES,                     )
                                   )
              **Plaintiff,**     )
                                   )          **CIVIL ACTION**
v.                                 )
                                   )          **No. 05-2374-CM**
                                   )
ARCH ALUMINUM & GLASS              )
COMPANY, INC.,                     )
                                   )
              **Defendant.**     )
_____    )

## MEMORANDUM AND ORDER

Plaintiff Scott Bridges, a former employee of defendant Arch Aluminum & Glass Company, Inc., brings this action for race discrimination and retaliatory discharge under 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981, *et seq.*  This matter is before the court on defendant's motion for summary judgment (Doc. 55).

## I.    FACTUAL BACKGROUND[1]

Defendant is a custom glass and aluminum fabricator and wholesaler and an employer within the meaning of Title VII.  Defendant has several branches across the country, including one in Kansas City, Kansas.  On January 23, 2004, plaintiff, an African American, began his employment with defendant as a salesman in its St. Louis office.  Plaintiff relocated from Oregon and received $5,000 in compensation toward his moving expenses and relocation costs.  Around March 2004, defendant promoted plaintiff to Branch Manager for its Kansas City, Kansas branch.  Plaintiff did

_____

[1] The court construes the facts in the light most favorable to the non-moving party pursuant to Fed. R. Civ. P. 56.  The court has combined the facts proposed by both parties, and included only those that are relevant, material, and properly supported by the record.

not receive an allowance for moving expenses for relocating from St. Louis to Kansas City because the branches are in the same region; defendant has not compensated any employees for moving between Kansas City and St. Louis.  In March 2004, Jeff Kirby, a current, Caucasian sales employee, was promoted to Sales Manager for the Kansas City branch.

As Branch Manager, plaintiff supervised Mr. Kirby.  He was also responsible for addressing human resources issues and either (1) handling them himself, or (2) contacting Ed Rivas, the Director of Human Resources.  Plaintiff believed that Mr. Kirby neglected his job responsibilities and was facing personal issues.  During November 2004 and January 2005, plaintiff reported his concerns to the management.

Sometime between September and December 2004, plaintiff received the following complaints from defendant's employees and reported them to the management: (1) Vince Guerrero complained about overhearing an inappropriate statement about a Hispanic employee; (2) Sandy Shepard complained that Mr. Kirby had approached her on several occasions about going on a date; and (3) an African American truck driver complained about his supervisor.  In February 2005, plaintiff reported to Mr. Rivas and Rick Silverstein, Vice President of Operations, that he had received a complaint from Roxanne Cabrera alleging that Mr. Kirby had made suggestive comments to her, sat next to her on an office chair, and asked her out on a date.  Mr. Silverstein believed plaintiff's report was just another attempt to place Mr. Kirby in a negative light to management.

While Branch Manager, plaintiff's relationship with the overall workforce at the Kansas City branch became strained.  And there was tension between plaintiff and some of the employees.  An employee told plaintiff that he acted "edgy" and was "short with – some employees."  Bob Martin, Vice President of Manufacturing, met with plaintiff and Mr. Kirby regarding Mr. Martin's concerns

about the working relationship between plaintiff and Mr. Kirby.  Mr. Martin told plaintiff that he and

Mr. Kirby needed to get along or they would face the consequences.  And another employee, Tony

Stempien, said he would quit if plaintiff remained Branch Manager.

Defendant terminated plaintiff on February 25, 2005 and replaced him with Mr. Kirby.

Plaintiff was told he was discharged (1) because he "didn't fit into the Company's culture"; and (2)

based upon his "overall performance."  Defendant also considered the poor working relationship

between plaintiff and Mr. Kirby and Mr. Stempien's threat that he would leave if plaintiff

stayed—Mr. Stempien was liked by employees at the plant and worked well with Mr. Kirby.

During his employment, plaintiff received several increases in pay.  While he was Branch Manager,

the Kansas City branch operated within defendant's expectations.  Doug Couch, a Caucasian, is the

current Branch Manager, and Mr. Kirby is no longer employed by defendant.

## II.      STANDARDS FOR JUDGMENT

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine

issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences

therefrom in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144

F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986)).

## III.     DISCUSSION

Plaintiff alleges he was terminated (1) because of his race and (2) in retaliation for reporting

incidents of racial and sexual harassment.  Plaintiff also alleges that he was treated less favorably

than non-Black employees.  Defendant argues that it is entitled to summary judgment because

plaintiff cannot establish a prima facie case of race discrimination or retaliation and defendant

articulated a legitimate, non-discriminatory justification for plaintiff's separation.

### A.    Plaintiff's Race Discrimination Claims Under Title VII and Section 1981

In the absence of direct evidence of discrimination, the court analyzes plaintiff's claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 802. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for the employment action. *Id.* If the defendant meets its burden, then the plaintiff must demonstrate that an issue of material fact exists as to whether the defendant's proffered reason is merely pretextual. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).

### 1.    Prima Facie Case

To establish a prima facie case of race discrimination based upon disparate treatment, plaintiff must demonstrate that "(1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances which give rise to an inference of discrimination." *Pendelton v. Univ. of Kan. Med. Ctr.*, No. 04-2206-KHV, 2006 WL 83441, at *7 (D. Kan. Jan. 11, 2006) (citing *Hysten v. Burlington N. & Santa Fe Ry. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002)). To establish a prima facie case of race discrimination based upon his termination, plaintiff must demonstrate that: (1) he belongs to a protected class; (2)

he was qualified for his position; (3) he was discharged despite his qualifications; and (4) the position was not eliminated after his discharge.[2]  *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005) (citing *Perry v. Woodward*, 199 F.3d 1126, 1138 (10th Cir. 1999)).

### a.   *Different Terms of Employment*

In the Complaint and the Pretrial Order, plaintiff sets forth allegations that he received disparate treatment, but fails to identify any specific adverse employment actions other than his discharge.  The record suggests that plaintiff may be basing his claims on the following allegations: (1) Mr. Couch, the current Branch Manager, received higher wages than plaintiff, and (2) plaintiff was compensated less favorably than non-Black employees for his relocation expenses.  "A plaintiff wishing to prove discriminatory animus with evidence that his employer treated him differently from other employees bears the burden of showing that the comparison is legally relevant—i.e., that the employees were similarly situated."  *Hysten,* 296 F.3d at 1182.  Plaintiff has not met his burden.  He has not alleged facts to show that he was similarly situated to Mr. Couch or non-Black employees who received more money for relocation expenses, and nothing in the record suggests he was similarly situated to these individuals.  Mr. Couch did not become Branch Manager until after Mr. Kirby was Branch Manager.  Plaintiff has not provided any evidence that Mr. Couch had the same duties and responsibilities that plaintiff had as Branch Manager.  Plaintiff has also failed to show that he was treated differently than similarity situated employees in regard to relocation expenses; there is no evidence in the record that any employee, similarly situated or not, received more

---

[2]  Defendant suggests that the court use the three-prong prima facie test requiring plaintiff to show that (1) he is a member of a protected class; (2) he is qualified for the job and was performing the job satisfactorily; and (3) he was terminated under circumstances giving rise to an inference of discrimination.  Although this three-part test is appropriate in certain circumstances, the court applies the four-part *McDonnell Douglas* test to discharge cases.  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 n.6 (10th Cir. 2000).  If shown, the four factors "do 'give rise to an inference of discrimination. . . .'" *Id.*

favorable relocation compensation than plaintiff.  The court finds that plaintiff's race discrimination claims based on compensation or adverse employment actions other than his discharge are without merit.  Defendant's motion is granted with respect to these claims.

### b.      Plaintiff's Discharge

The parties do not dispute that (1) plaintiff belongs to a protected class; (2) defendant terminated plaintiff's employment; and (3) defendant did not eliminate plaintiff's position after plaintiff's discharge.  Thus, to establish a prima facie case of race discrimination, plaintiff must show that he was qualified for his position as Branch Manager and terminated despite his qualifications.

The record shows that the Kansas City branch was running within company expectations while plaintiff was Branch Manager; plaintiff's performance was adequate throughout most of his employment; and plaintiff received several pay increases and a discretionary bonus.  Defendant terminated plaintiff because he "didn't fit into the Company's culture" and because another employee threatened to resign if plaintiff remained Branch Manager.  Under these circumstances, a triable issue exists as to whether plaintiff was qualified for his position and defendant terminated plaintiff despite plaintiff's qualifications.  Plaintiff has established the prima facie elements of his race discrimination claim based upon his discharge.

### 2.      Legitimate, Nondiscriminatory Reason for Plaintiff's Discharge

Because plaintiff has shown a prima facie case of race discrimination, defendant must provide evidence of a legitimate, non-discriminatory reason for plaintiff's discharge.  To satisfy this burden, defendant need only produce evidence that would allow the trier of fact to conclude that plaintiff's discharge was not motivated by discrimination.  *Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279 (10th Cir. 1999).  Defendant alleges that plaintiff was discharged because he did not fit

into defendant's culture and because his overall performance and conduct were not satisfactory.

Defendant was displeased with plaintiff's conduct because defendant believed that plaintiff's

complaints regarding Mr. Kirby were undeservedly demeaning, unnecessarily disrespectful and

exacerbated the tension between plaintiff and Mr. Kirby.  Defendant thought plaintiff inadequately

performed his job duties because employees had referred to plaintiff as "edgy" and "short" and told

management that plaintiff had "no idea what he was doing."  Defendant also considered the effect of

Mr. Stempien's resignation if plaintiff remained Branch Manager.  The court finds that defendant

has met its "exceedingly light" burden to articulate a nondiscriminatory reason for plaintiff's

termination.  *Id.*

### 3.      Pretext

The court next considers whether plaintiff has shown that defendant's proffered reasons for

plaintiff's termination were pretextual.  To establish pretext, plaintiff must show either that "a

discriminatory reason more likely motivated the employer or . . . that the employer's proffered

explanation is unworthy of credence."  *Burdine*, 450 U.S. at 256.  Plaintiff may accomplish this by

demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions

in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them unworthy of credence."  *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.

1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)).  Plaintiff's

"mere conjecture that [his] employer's explanation is a pretext for intentional discrimination,"

however, "is an insufficient basis for denial of summary judgment."  *Branson v. Price River Coal

Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

After reviewing the evidence, the court finds that there is a genuine issue of material fact

regarding plaintiff's alleged performance deficiencies.  The evidence indicates that plaintiff was

running the branch within defendant's expectations.  And, although there was tension at the plant, the record indicates it may have been created by multiple employees, not solely a result of plaintiff's performance.  Plaintiff has offered evidence that defendant's testimony regarding which employees complained about plaintiff and the nature of the complaints is inconsistent; defendant has no record of the complaints and has not produced any of the documents it relies on for support.  Furthermore, defendant's allegation that plaintiff did not know the business and made hasty and poor decisions raises additional issues of material fact that must be determined by the trier of fact.  The court finds that plaintiff has met his burden.  For these reasons, the court denies defendant's summary judgment motion on plaintiff's race discrimination claims arising from his termination.

### B.      Retaliatory Discharge

The court also applies the *McDonnell Douglas* burden-shifting framework to plaintiff's retaliation claim.  *Robinson v. Vinke*, 35 Fed. Appx. 734, 736 (10th 2002).  For plaintiff to establish a prima facie case of retaliation, he must show that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to an adverse employment action subsequent to or contemporaneous with the protected activity; and (3) a causal connection existed between the protected opposition and the adverse employment action.  *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985 (10th Cir. 1996); *Jones v. Rent-A-Center Inc.*, 240 F. Supp. 2d 1167, 1175 (D. Kan. 2002).

Plaintiff alleges defendant retaliated against him by terminating his employment because he reported complaints by: (1) an African American truck driver; (2) Sandy Shepard; (3) Vince Guerrero; and (4) Roxanne Cabrera.  For purposes of this motion, defendant does not dispute that plaintiff engaged in a protected activity or that his discharge was an adverse employment action. Instead, defendant argues that it is entitled to summary judgment on plaintiff's retaliatory discharge claim because no causal connection existed between plaintiff's discharge and any protected activity.

Plaintiff may establish that a causal connection existed between the protected opposition and his termination "by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006) (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004)).  In the absence of "very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence to establish causation." *Id.* at 1182.

Plaintiff reported three of the complaints several months before his discharge, but he was discharged within forty-eight hours of reporting Ms. Cabrera's complaint.  A two-day gap between the protected activity and the adverse employment action is sufficient to create an inference of causation based on timing alone. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (recognizing that a "one and one-half month period between protected activity and adverse action may, by itself, establish causation," but that "a three-month period, standing alone, is insufficient to establish causation.").  Defendant also argues that there is no casual connection because the management did not believe that plaintiff engaged in any protected activity.  This argument raises genuine issues of material fact that cannot be determined on a motion for summary judgment.  Accordingly, the court finds that plaintiff has sufficiently demonstrated a prima facie case of retaliation.

Defendant argues that there are legitimate, nondiscriminatory reasons for plaintiff's termination, but the court has already held that a reasonable jury could construe defendant's reasons as pretextual.  The court, therefore, denies defendant's motion for summary judgment on plaintiff's retaliation claims.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc.

55) is granted in part and denied in part.

Dated this 11th day of December 2006, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**