## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **SCOTT BRIDGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 05-2374-CM** |
| | ) | |
| **ARCH ALUMINUM & GLASS** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM AND ORDER

Plaintiff Scott Bridges, a former employee of defendant Arch Aluminum & Glass Company, Inc., brought this action for race discrimination and retaliatory discharge under 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981, *et seq.*  This matter is before the court on plaintiff's Motion to Enforce Settlement Agreement and For Costs and Fees (Doc. 70).

Magistrate Judge Waxse conducted a settlement conference in this matter on December 20, 2006.  During the conference, the parties reached a settlement agreement and entered the agreement into the record before Judge Waxse.  Defendant agreed to pay plaintiff a total of $35,000.00 in exchange for a stipulation of dismissal with prejudice and a mutual release of claims.  Specifically, defendant agreed to pay $21,000.00 directly to plaintiff in 2006 as a non-wage payment reported on a form 1099 and to pay $14,000.00 directly to plaintiff's attorney Ronald E. Sandhaus for attorneys' fees in the first week of 2007.  Defendant also agreed to prepare the pleadings and settlement documents necessary to finalize the agreement.

After the conference, defense counsel drafted a Settlement Agreement and General Release. (Pl.'s Mem. Supp. Ex. A.)  Defendant's proposed settlement agreement contains several terms not

agreed to at the settlement conference.  As reflected in plaintiff's proposed Settlement Agreement and General Release, plaintiff agreed to some, but not all, of the additional terms.  (Pl.'s Mem. Supp. Ex. B.)

The parties dispute whether terms regarding the following issues should be included in the agreement:  (1) ownership, use, and disclosure of proprietary or confidential information; (2) confidentiality of the settlement process and final agreement; (3) plaintiff's future employment with defendant; (4) the effect, resolution, and arbitration of breaches of the Settlement Agreement; (5) plaintiff's return of defendant's property; (6) whether plaintiff will agree not to disparage defendant; (7) whether plaintiff will agree to direct all job reference requests to Ed Rivas; and (8) a severability clause.

"A trial court has the power to summarily enforce a settlement agreement entered into by the litigants while the litigation is pending before it."  *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004) (quoting *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993)).  The Tenth Circuit has held that a trial court must hold an evidentiary hearing when material facts concerning the terms of a settlement agreement are in dispute.  *See Hardage,* 982 F.2d at 1496.  In this case, however, there are no disputed issues of material fact—defendant does not dispute the terms of the December 20, 2006 agreement, but disputes the interpretation of one of the terms and whether that term allows for negotiation of additional terms.

When determining the enforceability of a settlement agreement, the court applies state law. *Rogler v. Standard Ins. Co.,* 30 Fed. App'x. 909, 913 (10th Cir. 2002) (citing *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000)).  Under Kansas law, a settlement agreement does not need to be in writing to be enforceable and, once entered, "should be enforced absent a finding of

fraud or bad faith." *Lewis v. Gilbert*, 785 P.2d 1367, 1368 (Kan. Ct. App. 1990). "The law favors the compromise and settlement of disputes and when parties, in the absence of any element of fraud or bad faith, enter into an agreement settling and adjusting a dispute, neither party is permitted to repudiate it." *Id.* (quoting *Connor v. Hammer*, 439 P.2d 116, 118 (Kan. 1968)). In order for the parties to form a binding contract, they must reach a meeting of the minds as to all essential terms. *Phillips & Easton Supply Co. v. Eleanor Int'l, Inc.*, 512 P.2d 379, 383 (Kan. 1973) (citations omitted).

Here, neither party alleges fraud or bad faith with respect to the December 20, 2006 agreement. And the court finds that the parties agreed to the essential terms of the contract—plaintiff agreed to dismiss the case and release its claims in exchange for payment. But defendant contends that the parties "agreed to meet and confer to work out the terms of the settlement agreement release." (Def.'s Br. 2.) To support its argument, defendant points the court to the parties' agreement that they "would execute a mutual release to be prepared by [defendant]'s counsel." (Def.'s Br. 2.)

Generally, "a 'release' is a discharge of all wrongdoers." *Stueve v. Am. Honda Motors Co.*, 457 F. Supp. 740, 746 (D. Kan. 1978). "Mutual" means reciprocal. Black's Law Dictionary 1039 (7th ed. 1999). Thus, defendant was to prepare a document that discharged both parties from wrongdoing. Instead, defendant prepared a Settlement Agreement and General Release that incorporated additional agreement terms and placed additional burdens on plaintiff. Although plaintiff agreed to some of the additional terms, he was not obligated to agree to them. The parties agreed that defense counsel would prepare the mutual release, not that the parties would continue negotiating additional terms. Additionally, nothing in the tape-recorded transcript of the parties' agreement demonstrates that the parties planned to negotiate additional terms.

-3-

Defendant also argues that the parties understood that these terms would be negotiated after the settlement conference because the terms are "standard release terms."  Defendant cites no authority for its position that the additional terms are so standard in settlement agreements that the parties' silence on the terms indicates that they intended to negotiate them later.  As noted above, the parties agreed to the essential contract terms.  The "standard release terms" are not essential contract terms.  *See e.g. Meek & Assocs. v. First Union Ins. Group*, No. 99-2519-CM, 2002 WL 1998204, *3 (Aug. 6, 2002) (finding that under Kansas law, confidentiality is a not material term of a contract).  The court finds that neither the law nor common practice support a finding that the additional terms are so standard that the parties understood the terms would be added even though the parties did not agree to them.

The court has reviewed the record and finds that the parties entered into a valid, enforceable settlement agreement in which defendant agreed to pay plaintiff a total of $35,000.00, distributed as explained above, in exchange for a stipulation of dismissal with prejudice and a mutual release of claims.  The additional terms added to defendant's proposed Settlement Agreement and General Release were not a part of the parties' agreement.

Plaintiff requests attorney fees for this motion, interest on the settlement payments until paid, and the loss of the value of the settlement due to Social Security taxes plaintiff will likely incur because of the delay in payment.  At this time, the court denies these requests because the record does not demonstrate that defendant acted in bad faith, and the parties acted promptly to resolve the matter.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Enforce Settlement Agreement and For Costs and Fees (Doc. 70) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the parties execute a stipulation of dismissal and a

mutual release consistent with this Order.

Dated this 9th day of January 2007, at Kansas City, Kansas.

**s/ Carlos Murguia**
**CARLOS MURGUIA**
**United States District Judge**